[No. B021600. Second Dist., Div. Two. July 2, 1987.]

JOYCE HILLEARY, Plaintiff and Respondent, v.
HAROLD W. GARVIN, Defendant and Appellant.

COUNSEL

Bonne, Jones, Bridges, Mueller & O'Keefe, Janice B. Lee Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Mary R. Barnett for Defendant and Appellant.

Turchin & Lee and Raymond L. Turchin for Plaintiff and Respondent.

OPINION

**COMPTON, J.**—Defendant Harold W. Garvin, M.D. appeals from an order denying his petition seeking to compel plaintiff Joyce Hilleary to arbitrate her medical malpractice claim against him pursuant to a written agreement between the parties.[1] We reverse.

The record reveals that on August 24, 1984 plaintiff visited the Ob-Gyn Medical Group, Inc. for treatment of vaginal bleeding and for an examination to determine whether she was pregnant. At that time, she executed a document entitled "Mutual Arbitration Agreement." As discussed, *infra,* no other written contract outlining her medical treatment was signed by the parties.

After examining plaintiff, Dr. Gordon E. Hanusek of the clinic diagnosed her condition as pregnancy complicated by a threatened miscarriage due to fibroid tumors. Plaintiff apparently was aware that she had the tumors prior to coming to the medical group.

On August 28, 1984, plaintiff suffered a miscarriage. The following day, Dr. Hanusek performed a dilation and curettage procedure. On September 20, 1984, plaintiff returned to the clinic for followup care. During that examination, Dr. Hanusek informed plaintiff that she would continue to have miscarriages unless the tumors were removed. The doctor illustrated the operation by marking where the incision would be made on a diagram of a female torso drawn on the front page of the arbitration agreement. Plaintiff agreed to the surgery.

On November 14, 1984, Dr. Hanusek performed an exploratory laparotomy and myomectomy. On November 19, 1984, after being discharged from the hospital, the surgical incision allegedly reopened causing plaintiff

---

[1] "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration." (Code Civ. Proc., § 1294.)

substantial injury. Plaintiff subsequently filed an action alleging that defendants[2] committed malpractice by failing to properly close plaintiff's incision.

At the hearing on the motion to compel arbitration, plaintiff contended that the arbitration agreement applied only to the course of her initial obstetric treatment and not to the followup surgery. Defendant, on the other hand, contended that the language of the agreement encompassed the full course of plaintiff's treatment.

Finding the arbitration agreement to be ambiguous,[3] the trial court ruled in favor of plaintiff. This appeal followed.

■ Arbitration is a method of resolving disputes which is favored over litigation. (*Baker* v. *Sadick* (1984) 162 Cal.App.3d 618, 624 [208 Cal.Rptr. 676].) It eases court congestion, is less expense and affords an expeditious disposition of the matter. (*Ibid*; *Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413, 416 [152 Cal.Rptr. 491].) As a result, the Legislature has codified the right to voluntary arbitration of medical malpractice claims and has declared that agreements to arbitrate, when drafted in a prescribed form, are not unconscionable nor are they contracts of adhesion. (§ 1295, subd. (e).)

Specifically, subdivision (a) of Code of Civil Procedure[4] section 1295 provides: "*Any contract* for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract...." (Italics added.)

Defendant's arbitration agreement tracks the mandatory language found in section 1295. The agreement stated: " 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by

---

[2] Along with Dr. Garvin, the complaint named Drs. Hanusek and Farhat, the Ob-Gyn Medical Group, Inc., and Valley Presbyterian Hospital as defendants. Plaintiff, however, has elected only to press her action against Dr. Garvin.

[3] The trial court stated: "I think the bottom line in this is really going to end up being that there continues to be, no matter how I look at this thing, an ambiguity as to what was intended to be covered, something that could readily have been obviated by the doctor's Group. But unfortunately they didn't obviate it . . . [b]y saying [to the defendant that] you have come in here for treatment for your various gynecological problems, pregnancy and everything else we have talked about today, this is going to be a course of treatment, and this arbitration agreement covers our relationship. As long as you keep coming in here, why, you are subject to arbitration."

[4] All further references are to the Code of Civil Procedure.

submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'" (§ 1295, subd. (a).)

In the instant case, the trial court found the arbitration agreement to be ambiguous, presumptively because it was not accompanied by a contract delineating a specific course of treatment to be administered. Such a contract is neither required by the statute nor normally expected by a patient.

Interpretation of a written instrument is a question of law unless the interpretation rests upon facts found from extrinsic evidence. "'Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation]." [Citation.]' [Citation.] Where no contradictory extrinsic evidence has been introduced, the appellate court has before it all the evidence presented to the trial court. There is no reason to defer to the trial judge where events at trial and demeanor of the witnesses play no part in the decision." (*Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].)

Here, plaintiff submitted herself to the medical group for a course of *continuing* treatment relating to complications of childbirth. As most patients, she did not enter into lengthy or detailed bargaining negotiations as might be present in other types of commercial transactions. Rather, the parties, as in the traditional doctor-patient relationship, entered into an implied-in-fact contract[5] that defendant would use his best medical judgment to diagnose and treat her condition, and in return, she would follow his prescribed treatment and pay for his services. Her condition was one of a complicated pregnancy with associated gynecological problems.

We think defendant, by following the language and form of section 1295, did all that was required. To impose upon a physician, during a continuous doctor-patient relationship, the extra burden of having to renew the arbitration agreement each time there is a variation in treatment or ailment would be impractical, and would frustrate the purpose of the statute, which is to facilitate, not emasculate, the arbitration process.

---

[5]"An implied contract is one, the existence and terms of which are manifested by conduct." (Civ. Code, § 1621.)

Plaintiff argues that section 1295 contemplates only underlying contracts which are reduced to writing. We disagree. The clear meaning of the statute is that any contract for health care (with the exception of certain licensed health care service plans (§ 1295, subd. (f)), whether written or oral, express or implied, is within the ambit of the legislation. The statute particularly recognizes in subdivision (c) that most medical care is dispensed without recourse to formalized payment structures, but by monthly billings for past services rendered. That subdivision provides in part that "Once signed [an arbitration] contract governs *all* subsequent *open-book account transactions for medical services* for which the contract was signed until or unless rescinded by written notice within 30 days of signature." (Italics added.)

Plaintiff, as might be expected, in opposing the motion to compel arbitration, stated that it was her "intent and understanding that the paper related to the arbitration of medical services rendered in relation to my pregnancy, only." Her uncommunicated subjective intent is not relevant. ■ The existence of mutual assent is determined by objective criteria. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was mutual agreement. (*Meyer* v. *Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 119, p. 144.) ■ Here, plaintiff voluntarily signed the agreement which explicitly stated that "*any dispute* as to medical malpractice" will be submitted to arbitration. There is no evidence from which a reasonable person could conclude that the parties intended that the followup surgery for removal of the tumors would be severable from the treatment for the pregnancy.

The judgment is reversed. The trial court is directed to enter an order staying the present action and compelling plaintiff to arbitrate her claim.

Defendant-appellant to recover costs on appeal.

Roth, P. J., and Fukuto, J., concurred.