[No. A090915. First Dist., Div. Five. May 10, 2001.]

MARIN STORAGE & TRUCKING, INC., Cross-complainant and Appellant, v.
BENCO CONTRACTING AND ENGINEERING, INC., Cross-defendant and Respondent.

## COUNSEL

Lynch, Gilardi & Grummer, Duane W. Grummer and Wallace M. Ticef for Cross-complainant and Appellant.

Burnham Brown, Clark J. Burnham, Paul Caleo and Gregory H. McCormick for Cross-defendant and Respondent.

## OPINION

**SIMONS, J.**—In this action for indemnification, the trial court found the indemnification clause in the parties' contract to be unenforceable because there was no mutual consent of the parties and because the clause was "procedurally" unconscionable. We reverse the judgment.

### FACTS

### *The Agreement*

Marin Storage & Trucking, Inc., doing business as Reliable Crane & Rigging (hereafter Reliable), is in the business of providing cranes for rendering hoisting and rigging services. Since at least 1985, Reliable has been doing business with Benco Contracting and Engineering, Inc. (hereafter Benco), entering into short-term hourly crane rental agreements.

Pursuant to their prior pattern of dealings, Benco arranged by telephone to have Reliable provide a crane and a crane operator on August 15 and 16, 1996, for an hourly rate. Benco was the general contractor on a freeway overpass construction project in Oakland, and the crane was to be provided at the construction site for the purpose of hoisting rebar and I-beams.

The standard procedure consistently used by the parties during their long business relationship, and followed on the day in question, was to have Reliable's crane operator fill out a form at the end of the day indicating the number of hours worked at the site. The crane operator would present that

form to Benco's supervising employee at the job site, who would verify the hours and sign the form. The crane operator would give one copy of the form to the Benco signor, and return the other copies to Reliable's office. Reliable would then mail another copy of the form to Benco with its invoice for Benco's payment. Upon receipt of the invoice, Benco's accounts payable department would confirm the time charged and the job number with its copy of the form and then send a check.

The form consistently used by Reliable for all of its customers, including Benco, was entitled "Work Authorization and Contract." At the bottom of the form, just above the customer's signature line, was the statement, "This is a contract which includes all terms and conditions stated on the reverse side." Included on the reverse side were 10 numbered paragraphs, three of which pertained to indemnification. In particular, paragraph 3 provided: "If this Agreement involves the performance of work for Lessee/Customer on Lessee/Customer's premises, Lessee/Customer agrees to indemnify Reliable Crane and Rigging against all loss, expense, claims and liability of any nature resulting from injury or damage to person(s) or property caused by or arising from performance of such work." Paragraph 6 provided: "Lessee/ Customer agrees to pay reasonable attorney's fees and court costs if legal action is taken for collection of any rental or other sums due, or for collection of loss, damage or injury to the leased equipment or person(s) or property involving such equipment where such loss, damage or injury was, directly or indirectly, caused by Lessee/Customer."[1]

Over the years, going back to at least November 1985, Reliable had entered into dozens of short-term hourly contracts with Benco with the identical indemnity provisions. Although the president of Reliable had authority to negotiate the indemnity provisions, neither Benco nor any other customer had ever asked to change the indemnity terms of the Work

---

[1] Paragraph 4 also pertained to indemnity, but under circumstances not applicable here: "Prior to the commencement of work involving the equipment of Reliable Crane and Rigging, the Lessee/Customer agrees and understands that any and all underground utilities . . . will have been accurately located at the sole expense and responsibility of Lessee/Customer. The Lessee/Customer agrees to indemnify Reliable Crane and Rigging against all loss, expense, claims or liability of any nature resulting from injury or damage to persons or property, including but not limited to damage to such underground utilities, caused by or arising from Lessee/Customer's failure to timely or accurately locate such underground facilities."

Prior to 1993, the form used by Reliable and its customers, including Benco, was titled "Equipment Rental Agreement." During that time, the phrase which appeared just above the customer's signature line read, "This service/rental order is subject to the terms and conditions stated on the reverse side hereof and hereby made a part of this service/rental; and lessee/customer agrees to comply fully with such terms and conditions." The indemnity provisions contained in paragraphs 3 and 6 were identical.

Authorization and Contract. The president of Benco testified that until the accident he had never noticed the indemnity provisions on the back of the Work Authorization and Contract forms.

On August 15, 1996, Benco's jobsite superintendent, Art Lukado, signed the Work Authorization and Contract for the rental of a crane and crane operator as he had done on numerous occasions. The next day, August 16, 1996, Benco's carpenter foreman, Aaron Garcia, signed the form. Mr. Garcia was a relatively new foreman and had not signed the forms before, but he did sign them on later occasions. Paragraph 10 of the Work Authorization and Contract pertained to the authority of the person signing the form: "Signing this Agreement represents and warrants that he/she is authorized to enter into this agreement on behalf of the Lessee/Customer."

### The Accident

Tri-City Reinforcing Corporation (hereafter Tri-City) was the subcontractor on the freeway construction project in charge of the iron work. On August 16, 1996, the Benco supervisor directed the crane operator from Reliable to work with the Tri-City crew. William Thompson, who was the Tri-City foreman on the project, suffered a broken leg while directing the crane operator in removing some I-beams from a support column. He sued Benco and Reliable for negligence and ultimately settled with Benco, dismissing Reliable without any payment of money by Reliable.

### PROCEDURAL HISTORY

Reliable cross-complained against Benco for express indemnity. Despite the settlement and dismissal, Reliable sought indemnification for its attorney fees, totaling over $45,000, expended in the underlying lawsuit. A nonjury trial was then held on the indemnity cross-complaint.[2] During trial, on its own motion, the trial court raised the question whether the Work Authorization and Contract containing the indemnification clause was an unconscionable contract of adhesion. The court requested briefing from both parties, and testimony was then taken on the circumstances surrounding the formation of the agreement.

---

[2]Benco had moved for summary adjudication on grounds (1) that Aaron Garcia, who had signed the Work Authorization and Contract, had no authority to bind Benco to an indemnity agreement and (2) that the indemnification clause (par. 3) did not apply as the work was not performed on Benco's premises. The motion was denied. At trial, the court ruled that the reference in the indemnification clause to the customer's premises included the jobsite controlled by the customer. Trial proceeded on whether Mr. Garcia had authority to enter into the indemnity agreement on behalf of Benco.

At the close of trial, the trial court issued a statement of decision, concluding that "the reverse side of [the Work Authorization and Contract] is unenforceable as lacking a mutuality of assent and as the product of procedural unconscionability." Judgment was entered in favor of Benco.

## DISCUSSION

At the outset, we note that the trial court's decision is internally inconsistent. Because mutual assent is essential to the existence of a contract (Civ. Code, §§ 1550, 1565), the court's finding that there was no mutual assent to the terms of the Work Authorization and Contract was a finding that no contract had been formed. At the same time, however, the court found the terms of the Work Authorization and Contract were unconscionable, a finding which presupposes an existing contract. ■ The doctrine of unconscionability is a defense to the enforcement of a contract or a term thereof. (Civ. Code, § 1670.5; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 213 [27 Cal.Rptr.2d 396].) No such defense arises without a contract.

■ Ordinarily, inconsistent findings would be grounds for reversal. (*Stiefel v. McKee* (1969) 1 Cal.App.3d 263, 266 [81 Cal.Rptr. 565].) However, appellant does not raise the point, and we will resolve the inconsistency by construing the trial court's ruling to rest on alternative grounds.

### A. *Mutual Assent*

■ Every contract requires mutual assent or consent (Civ. Code, §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing. (*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1816 [34 Cal.Rptr.2d 732]; *Meyer v. Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846]; *Union Bank v. Ross* (1976) 54 Cal.App.3d 290, 296 [126 Cal.Rptr. 646].) ■ Here, the document in question is entitled Work Authorization and Contract. The clause immediately above the customer's signature states, "This is a contract which includes all terms and conditions stated on the reverse side. . . ." The reverse side contains 10 numbered paragraphs, including the indemnification clause in paragraph 3. Under the general rule, Benco would be deemed to have assented to the contract when Aaron Garcia signed the form.

■ An exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the

recipient. In such a case, no contract is formed with respect to the undisclosed term. (E.g., *Cory v. Golden State Bank* (1979) 95 Cal.App.3d 360, 366-367 [157 Cal.Rptr. 538] [service charge provision on back side of money order]; *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 993-994 [101 Cal.Rptr. 347] [arbitration clause contained in "Acknowledgement of Order"]; *India Paint Co. v. United Steel Prod. Corp.* (1954) 123 Cal.App.2d 597, 606-607, 610-611 [267 P.2d 408] [disclaimer of warranty contained in invoice].) ▮ The trial court relied upon this exception, finding that the document, although labeled a contract, had the appearance of an invoice and served merely as an acknowledgement of the hours logged by the crane operator.

We disagree with the trial court's conclusion drawn from the undisputed facts. As the trial court found, the document "clearly" indicated on its face that it was a contract and specifically referred to the terms on the reverse side. Over the course of their lengthy history of doing business together prior to the accident, the parties had used the Work Authorization and Contract dozens of times, and Benco had ample opportunity to examine the back side of the form, although Benco's president apparently failed to do so. By its conduct in paying the invoices generated from the Work Authorization and Contract forms, Benco acknowledged the existence of a contract. There is simply no basis for a conclusion that the document was unrecognizable as a binding contract. (See *Markborough California, Inc. v. Superior Court* (1991) 227 Cal.App.3d 705, 716 [277 Cal.Rptr. 919]; *N.A.M.E.S. v. Singer* (1979) 90 Cal.App.3d 653, 656 [153 Cal.Rptr. 472].)

Apparently the trial court also found an absence of mutual assent because the contract terms were never negotiated between the parties. The court found no evidence that Aaron Garcia "was authorized to accede to [the indemnification] provision" and that it was unlikely Benco would have "ceded indemnification rights" by assenting to the indemnification agreement after the accident. As the court phrased it, "the facts belie any negotiation of terms or accomplishment of assent." Again we conclude the trial court erred in finding no contract was formed. As we indicated above, the trial court seems to have merged two separate concepts—the formation of a contract and the enforceability of a contract.

▮ An actual negotiation regarding every term has never been required for the formation of a contract. The existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement. (*Hilleary v. Garvin* (1987) 193 Cal.App.3d

322, 327 [238 Cal.Rptr. 247]; *Meyer v. Benko, supra,* 55 Cal.App.3d at p. 943.) There is no dispute that an oral contract was formed when Benco hired Reliable in August 1996, obligating Benco to pay for the hours worked at the stated price. Uncontroverted evidence demonstrated that pursuant to the parties' past practices Benco knew that the crane operator would present the Work Authorization and Contract to its on-site supervisor, who would approve the number of hours worked that day. This course of dealing, conducted over many years and numerous hirings, establishes that the oral agreement to hire included the terms contained in the Work Authorization and Contract. The parties' prior course of dealings may determine the meaning of a contract term or may add an agreed but unstated term. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 696, pp. 630-631; *Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 888-889 [41 Cal.Rptr.2d 740].)

*Insurance Co. of NA v. NNR Aircargo Service* (9th Cir. 2000) 201 F.3d 1111 is instructive. Dunlop orally contracted with NNR to import and store golf balls. When 1,350 cartons of balls were stolen from NNR's warehouse, NNR claimed its liability was limited to $50, based upon an invoice sent to Dunlop *after* the theft, which limited NNR's liability to $50 per shipment. The evidence established, however, that Dunlop had hired NNR on 47 earlier occasions and the same invoice had been sent on each occasion following completion of NNR's services. Applying California law, the court interpreted the oral agreement to include the terms of the invoice, including the limitation of liability. It rejected the contention that actual knowledge of the liability limit was required to enforce the invoice term, finding that the course of dealing should have put Dunlop on notice. Finally, the court rejected the argument that the term should not be implied because the invoice did not arrive until after the theft had occurred. The court reasoned that the parties' course of dealing justified enforcing the limitation.

The trial court's conclusion in the instant case that it would be inappropriate to bind Benco to an indemnity agreement entered into after the accident occurred misses the mark. This is not a situation where the parties were contracting for the first time or where Reliable was inserting a new indemnity provision when none had existed before. The parties' consistent history of past dealings informs our interpretation of their agreement. The indemnity provision was implicit in the parties' oral agreement to hire, which predated the accident.

The undisputed evidence established that after the accident occurred and the Work Authorization and Contract was presented and signed by Garcia,

Benco paid the invoice generated by and accompanying that form as it had done in the past and continued to do thereafter. These outward manifestations of assent by Benco confirmed its acceptance of the contractual terms. (*Rosendahl Corp. v. H. K. Ferguson Co.* (1962) 211 Cal.App.2d 313, 316 [27 Cal.Rptr. 56].) Benco's assent is not negated by the fact that no principal of Benco bothered to look at the form or read the back side during the entire history of the relationship. (*Meyer v. Benko, supra,* at p. 943.)

■ It may well be said that the Work Authorization and Contract was a contract of adhesion—a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms. (See generally *Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781]; accord, *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165].) A contract of adhesion is nonetheless a valid and existing contract. (*Graham v. Scissor-Tail, Inc., supra,* at p. 819; *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1375 [59 Cal.Rptr.2d 813]; *Yeng Sue Chow v. Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].) "Such contracts are, of course, a familiar part of the modern legal landscape . . . . They are also an inevitable fact of life for all citizens—businessman and consumer alike." (*Graham v. Scissor-Tail, Inc., supra,* at pp. 817-818, fns. omitted.) A finding of adhesion merely begins another inquiry—whether a particular provision within the contract should be denied enforcement on grounds that it defeats the expectations of the weaker party or it is unduly oppressive or unconscionable. (*Id.* at pp. 819-827; see *California Grocers Assn. v. Bank of America, supra,* 22 Cal.App.4th at p. 214.) We turn now to that issue.

B. *Unconscionability*

■ In *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473 [186 Cal.Rptr. 114, 38 A.L.R.4th 1], the court outlined an analytic framework for determining whether a particular contractual provision is unconscionable, explaining that unconscionability has both a procedural and a substantive element. The *procedural* element focuses on "oppression" and "surprise." " 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms . . . are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. [Citations.]" (*Id.* at p. 486.) The *substantive* element has to do with the effects of the contractual terms and whether they are unreasonable. Because a contract is largely an allocation of

risks, a contractual provision is "substantively suspect if it reallocates the risks . . . in an objectively unreasonable or unexpected manner. [Citations.]" (*Id.* at p. 487.)

To be unenforceable, a contract must be both procedurally and substantively unconscionable, although the greater the procedural unconscionability, the less unreasonable the risk reallocation that will be tolerated. (*A & M Produce Co. v. FMC Corp., supra,* 135 Cal.App.3d at pp. 487, 493; see also *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 114; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1533 [60 Cal.Rptr.2d 138]; *Ilkhchooyi v. Best* (1995) 37 Cal.App.4th 395, 409-410 [45 Cal.Rptr.2d 766].)

Earlier, in *Graham v. Scissor-Tail, Inc., supra,* 28 Cal.3d 807, the Supreme Court took a different approach. The court first examined whether the contract was a contract of adhesion. Because a contract of adhesion is still fully enforceable, the court turned its inquiry to whether enforcement should be denied. The court held that, first, enforcement of an adhesion contract will be denied if the contract or a provision thereof falls outside the reasonable expectations of the weaker party. Second, enforcement will be denied, even if the contract terms fall within the reasonable expectations of the parties, if the terms are unduly oppressive or unconscionable. (*Id.* at pp. 817-820.)

Subsequently, in *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925, footnote 9 [216 Cal.Rptr. 345, 702 P.2d 503], the Supreme Court observed that the two approaches of *Graham v. Scissor-Tail* and *A & M Produce Co. v. FMC Corp.* should lead to the same result. (See also *Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at pp. 1530-1533; *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1390, fn. 2 [54 Cal.Rptr.2d 477]; *Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663-1664 [18 Cal.Rptr.2d 563].) Most recently, the Supreme Court cited both approaches with approval. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at pp. 113-114.)

### 1. *Procedural Unconscionability*

The trial court found procedural unconscionability in that "no principal of Benco ever executed any of the forms, nor is there any evidence of any negotiations whatsoever. And while exhibit A describes itself as a 'Work Authorization and Contract,' it is more obviously an invoice for work performed than a contract. The reverse side of exhibit A is difficult to read and is presented for signature on the job site with no reasonable opportunity

to read or consider the terms. It is apparent no negotiation of terms was anticipated. The evidence demonstrates that exhibit A was treated by Benco as an invoice rather than as a contract purporting to modify the critical allocation of risks and liability for damages."

As indicated above, we find no error in the trial court's conclusion that the Work Authorization and Contract was a contract of adhesion and, hence, procedurally unconscionable. (See *Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at pp. 1533-1534.) The flaw in the trial court's decision is that the court ended its analysis with the determination of procedural unconscionability. The court concluded that "the reverse side of exhibit A is unenforceable as lacking a mutuality of assent and as the product of procedural unconscionability." The court overlooked the principle that the elements of procedural and substantive unconscionability must *both* be present before a court may refuse to enforce a contract. (*Robison v. City of Manteca* (2000) 78 Cal.App.4th 452, 458-459 [92 Cal.Rptr.2d 748]; *Stirlen v. Supercuts, Inc., supra,* at p. 1533; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533]; see *American Software, Inc. v. Ali, supra,* 46 Cal.App.4th at pp. 1390-1391.)

As one court put it, "Although an argument can be made that contract terms not actively negotiated between the parties fall outside the 'circle of assent' which constitutes the actual agreement [citation], commercial practicalities dictate that unbargained-for terms only be denied enforcement where they are also *substantively* unreasonable. [Citation.]" (*A & M Produce Co. v. FMC Corp., supra,* 135 Cal.App.3d at pp. 486-487, fn. omitted, original italics.)

The potential for the trial court's error was recognized by this court in *California Grocers Assn. v. Bank of America, supra,* 22 Cal.App.4th 205: "The notion of 'procedural' unconscionability merely addresses the question whether a contract is adhesive. In cases of the present sort, adhesiveness is not the central issue. 'To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, "the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." ' [Citations.] The central issue is whether the adhesive contract is unduly oppressive or unconscionable. [Citation.] To speak in terms of 'procedural' unconscionability is to elevate the fact of adhesiveness, which is not per se oppressive, to the same level as 'substantive' unconscionability, thus tending to obscure the real issue." (*Id.* at p. 214.)

### 2. *Substantive Unconscionability*

Benco argues that the omission in the trial court's decision is waived on appeal because Reliable made no objection to the statement of

decision and no request for a specific finding on substantive unconscionability. Benco asserts that under the rules of appellate review we must presume that the trial court made all findings necessary to its decision and, accordingly, we must presume that the trial court found the indemnification clause to be substantively unconscionable.

Benco mistakenly relies upon the substantial evidence rule of appellate review. Unconscionability is ultimately a question of law for the court. (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 621 [55 Cal.Rptr.2d 818]; *American Software, Inc. v. Ali, supra,* 46 Cal.App.4th at p. 1391; *Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at p. 1663.) It is true that numerous factual inquiries bear upon that question, e.g., the business conditions under which the contract was formed, and to the extent there are conflicts in the evidence or in the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the judgment. (*Olsen v. Breeze, Inc., supra,* at p. 621; *A & M Produce Co. v. FMC Corp., supra,* 135 Cal.App.3d at p. 489.) In the present case, however, the extrinsic evidence was undisputed. Consequently, we review the contract de novo to determine unconscionability. (*Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at p. 1663.) Contrary to Benco's assertion, the presumption of correctness does not extend to the omitted finding on substantive unconscionability. Even if we presume that the trial court found substantive unconscionability, we review that determination independently as a question of law.

 In *California Grocers Assn.,* Division Two of this court declined to apply the "unreasonableness" standard set forth in *A & M Produce Co. v. FMC Corp.* for substantive unconscionability. "Such an amorphous standard is far too subjective to provide adequate guidance." (*California Grocers Assn. v. Bank of America, supra,* 22 Cal.App.4th at p. 214.) Instead, the court held the standard should be whether the contract terms "shock the conscience." (*Id.* at pp. 214-215.) We in Division Five agreed with *California Grocers Assn.*: "With a concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience." (*American Software, Inc. v. Ali, supra,* 46 Cal.App.4th at p. 1391; see also *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 [83 Cal.Rptr.2d 348]; *24 Hour Fitness, Inc. v. Superior Court, supra,* 66 Cal.App.4th at p. 1213.)

In the present case, we cannot say that the indemnification clause was so unreasonable, unjustified, or one-sided as to shock the conscience. The

contract for leasing a crane obviously involved certain risks to both parties, including, of course, the risk of injury to a third party. Reliable sought to limit its liability by providing for indemnification whenever the crane was used on the customer's premises, where the customer would have control over the crane, or when the injury was caused by the customer. Within the commercial context in which the indemnification clause appears we can see nothing so inherently unfair about this reallocation of the risk as to shock the conscience.

Benco argues that the indemnity clause is substantively unconscionable because it provides for recovery even when the accident is solely the fault of the indemnitee. There is no basis in the record for concluding that the accident in this case resulted from any fault of Reliable. More significantly, Civil Code section 2782, subdivision (a), for reasons of public policy, bars the indemnification clause interpretation relied on by Benco as the premise to this argument.[3]

Our conclusion on substantive unconscionability is bolstered by the limited degree of procedural unconscionability. As the courts have recognized, there is a sliding scale or a balancing relationship between the two elements of unconscionability, such that the greater the degree of unfair surprise or unequal bargaining power, the less the degree of substantive unconscionability required to annul the contract and vice versa. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 114; *Olsen v. Breeze, Inc., supra,* 48 Cal.App.4th at p. 621; *Ilkhchooyi v. Best, supra,* 37 Cal.App.4th at p. 410.) Here, the procedural unconscionability, although extant, was not great. Benco was a sophisticated contractor which had been doing business with Reliable since 1985. There were other firms offering the same crane services in the Bay Area, and in fact Benco has been doing business with at least 10 other firms. Hence, there was no evidence that Benco had no meaningful choice other than to rent the crane from Reliable. Through the years, Benco had been a signatory to dozens of Work Authorization and Contract forms and had ample opportunity to examine the reverse side and the terms printed thereon. The indemnification clause was not disguised or hidden in any respect. In light of the low level of procedural unfairness, we conclude that a greater degree of substantive unfairness than has been shown here was required before the contract could be found substantively unconscionable.

---

[3]Civil Code section 2782, subdivision (a) provides in pertinent part: "[C]lauses . . . contained in, collateral to, or affecting any construction contract and which purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee or the promisee's agents . . . are against public policy and are void and unenforceable . . . ."

### 3. *Defeated Expectations*

As indicated above, the Supreme Court's analytical pathway in *Graham v. Scissor-Tail, Inc.*, offers an alternative to the two-pronged unconscionability standard of *A & M Produce Co. v. FMC Corp.* Although the appellate courts continue to employ the *A & M Produce Co.* framework, at least one court has found the approach of *Graham* to be preferable. (*California Grocers Assn. v. Bank of America, supra,* 22 Cal.App.4th at p. 214.)

*Graham* holds that a contract of adhesion may be denied enforcement if it is oppressive or unconscionable *or* if it frustrates the reasonable expectations of the weaker party. (*Graham v. Scissor-Tail, Inc., supra,* 28 Cal.3d at p. 820; accord, *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 113.) The latter principle applies if the weaker party is not given plain and clear notice of the contract term. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646, 652 [84 Cal.Rptr.2d 76].) Enforcement is denied because such inadequate notice alters the weaker party's preexisting expectations. (*Graham v. Scissor-Tail, Inc, supra,* at p. 820, fn. 18.)

In the present case, the trial court, in finding procedural unconscionability, relied in part upon the inadequate notice to Benco: "The contract terms are contained in very small, light gray print, difficult for anyone to read without nearly 20-20 vision, or with the use of corrective lenses." "The reverse side of exhibit A is difficult to read and is presented for signature on the job site with no reasonable opportunity to read or consider the terms." However, as a parallel to its omission of a finding on substantive unconscionability, the court made no finding that the inconspicuous nature of the indemnity clause served to frustrate the reasonable expectations of Benco.

In *Graham,* the Supreme Court concluded that the record failed to show the arbitration clause within the contract of adhesion was contrary to the plaintiff's reasonable expectations, where the plaintiff "had been a party to literally thousands of [musicians' union form] contracts containing a similar provision." (*Graham v. Scissor-Tail, Inc., supra,* 28 Cal.3d at p. 821.) In the present case, although the quantity is significantly smaller, Benco had signed and made payment on dozens of identical contracts for well over a decade. Moreover, there was evidence that other crane companies had similar indemnification provisions in their contracts and that Benco did business with many other companies. Under these circumstances, we cannot conclude that the indemnification clause, although embedded in a contract of adhesion, should be denied enforcement.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings on the cross-complaint. Costs on appeal are awarded to appellant.

Jones, P. J., and Stevens, J., concurred.

On June 8, 2001, the opinion was modified to read as printed above.