Filed 6/28/22  Shekarchi v. Fischbach CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| EIMAN SHEKARCHI et al., | B311989 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20SMCV00636) |
| v. | |
| JOSEPH S. FISCHBACH et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark H. Epstein, Judge.  Affirmed.

Nemecek & Cole, Mark Schaeffer and Marshall R. Cole, for Defendants and Appellants.

Law Firm of Harold Greenberg, Harold Greenberg and Jenifer Anisman for Plaintiffs and Respondents.

_____

Eiman Shekarchi and April Heidarian (respondents) signed a retainer agreement with the law firm of Fischbach & Fischbach. Respondents subsequently filed suit against Fischbach & Fischbach and partner Joseph S. Fischbach (appellants) alleging legal malpractice. Appellants moved to compel arbitration based on an arbitration clause in the parties' retainer agreement. The trial court credited respondent's version of the facts and denied the motion, finding that respondents met their burden of establishing that the agreement was unconscionable. Appellants appeal, contending that the parties' valid arbitration agreement was not revocable due to procedural or substantive unconscionability. We find substantial evidence of unconscionability and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 2017, respondents met with attorney Joseph S. Fischbach at his law firm, Fischbach & Fischbach. The parties discussed a real property issue for which respondents sought counsel, and Fischbach agreed to represent respondents.

Fischbach then handed the respondents a retainer agreement. He told them that although he usually charges a $25,000 retainer, he would only charge $5,000 because he could complete the case for a total of $25,000. Fischbach then handwrote "$5,000" on the first page of the retainer, opened it to the signature page, and gave the respondents a pen to sign the

---

[1] We present the evidence in the light most favorable to the judgment. (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 642, fn. 3.) The trial court credited respondents' version of the facts, which are recited herein without attribution, except where the facts are specifically attributed to the Fischbach declaration.

agreement. After they signed, Fischbach told respondents that he would email them a copy. Fischbach never emailed respondents a copy of the retainer, nor does it appear that he nor anyone else at his firm ever signed it. At no time did Fischbach go over the provisions of the retainer with respondents.

A little over three years later, respondents filed suit against appellants in Los Angeles Superior Court, alleging professional negligence. Appellants moved to compel arbitration, citing the arbitration clause in the retainer agreement. Fischbach submitted a declaration in support of the motion stating that he had watched respondents "review and sign the full retainer," and that his standard practice, which he said he followed with respondents, is to tell clients to read every paragraph. Fischbach also declared that he went over the entire agreement, including the arbitration clause, with respondents. Finally, his declaration states that he gave respondents a hard copy of the retainer agreement before they left his office on the day they signed the agreement.

The retainer agreement is a 10-page document, and the arbitration provision is on page six. It is in bold, underlined font that is slightly larger than the font of the other provisions in the agreement. The arbitration clause states:

"13.    ARBITRATION. In the event of any dispute arising out of, under or by virtue of this Agreement and the rendition of services to Client(s), both Client(s) and Attorney agree to submit that dispute to binding arbitration before a private mediation service, not the American Arbitration Association nor JAMS, to be selected by the demanding party and handled by a retired Superior Court Judge selected by the service. This is a self-executing clause, and no court order shall be required to compel

3

compliance. In the event either party refuses to attend an arbitration, the arbitrator shall have authority to proceed by way of default. Client(s) acknowledge(s) that by agreeing to this, Client(s) is/are waiving his/her constitutional rights, including but not limited to a jury trial. Client(s) understand(s) that but for the agreement to arbitrate any dispute, including those related to legal malpractice, that Attorney would not enter into the relationship. The Client(s) has/have been advised of the consequences of this paragraph and has been given the option to seek independent legal advice concerning its significance and has chosen to enter into this Agreement freely and voluntarily. Client(s) is/are not, by executing this Agreement, waiving the privileges and rights granted to Client(s) pursuant to the Business and Professions Code of the State of California with relation to non-binding fee dispute arbitration before the local Bar Associations. All Costs related to the arbitration shall be borne equally by the parties and the failure of a party to so participate in the fees and costs as billed shall be deemed to be a default at the option of the nondefaulting party and the nondefaulting party may proceed by default prove up in the Arbitration."

After holding a hearing on appellants' motion to compel arbitration in January 2021, the trial court issued an order denying the motion in February 2021. The trial court found the arbitration agreement both procedurally and substantively unconscionable. It did not take oral testimony, but it reviewed conflicting evidence in the declarations and found respondents' version credible after reviewing other provisions of the retainer agreement and determining that it was unlikely that those

4

clauses were truthfully explained to the respondents at the time of signing.

Appellants timely appealed.

## DISCUSSION

In ruling on a motion to compel arbitration, a trial court must make two determinations. First, the trial court must determine whether there is a valid agreement to arbitrate. If so, the trial court must grant the motion to compel arbitration unless a ground for revocation of the arbitration agreement exists. (*Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 580 (*Alvarez*).) State law favors the enforcement of valid arbitration agreements.[2] (*Ibid.*)

The party that files the motion to compel arbitration has the burden of showing by a preponderance of the evidence that a valid agreement exists. The burden then shifts to the other party to show by a preponderance of the evidence that the agreement should not be enforced. (*Alvarez, supra*, 60 Cal.App.5th at p. 580.) " 'In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' [Citation.]" (*Ibid.*)

---

[2] We apply state law. When it applies, the Federal Arbitration Act preempts state law, but the party seeking to compel arbitration has the burden of showing the case impacts federal commerce, which does not appear to be the case here, nor do appellants cite or mention federal law in their briefs. (See *Williams v. 3620 W. 102nd Street, Inc.* (2020) 53 Cal.App.5th 1087, 1091.)

5

When the trial court's decision regarding arbitrability rests on the resolution of disputed facts, as is the case here, "we review the decision for substantial evidence." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1158; accord, *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 (*Engineers & Architects*) and *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317.) In doing so, we defer to the trial court's findings of credibility and resolve the evidentiary conflicts in favor of the trial court's decisions. (*Engineers & Architects*, *supra*, 30 Cal.App.4th at p. 653.) In other words, "we view the evidence in the light most favorable to the prevailing party, and then consider whether this evidence is sufficient to allow a reasonable trier of fact to reach the challenged decision." (*Sanchez v. Martinez* (2020) 54 Cal.App.5th 535, 548 (*Sanchez*).)

I.  **Substantial Evidence Supports the Trial Court's Ruling That the Arbitration Agreement Is Unconscionable**

The trial court found that the parties had a valid agreement to arbitrate. In their appeal, appellants claim that the trial court erred in not enforcing the valid agreement by finding both procedural and substantive unconscionability. In the alternative, they argue that even if there is evidence of both procedural and substantive unconscionability, it is insufficient to find the agreement unconscionable.

"An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. [Citation.]" (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 83 (*Carmona*).) "Unconscionability is determined based on the unique factual situations of each case."

6

(*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 210.)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.] [¶] Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125–126 (*OTO*).) "The burden of proving unconscionability rests upon the party

asserting it." (*Ibid*.)

### A.    There Is Some Procedural Unconscionability

Courts begin a procedural unconscionability analysis by determining whether the contract is one of adhesion. (*OTO, supra*, 8 Cal.5th at p. 126.) The trial court determined that the retainer agreement was not a contract of adhesion, citing evidence that the parties negotiated the retainer amount from $25,000 to $5,000, and that in general under California law attorney-client retainer agreements are not considered contracts of adhesion. (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1110.)

A trial court need not find that a contract is one of adhesion to find there is procedural unconscionability, for which "the core issues are surprise and oppression." (*Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485, 493.) Here, the trial court found the arbitration clause procedurally unconscionable, citing evidence that Fischbach took steps to conceal it from the respondents. The court cited evidence that Fischbach handed the contract to respondents open to the signature page and did not give them a copy of the contract. The trial court correctly recognized that respondents should have read the contract before signing it, are generally bound to a contract they signed even if they did not read it, and that Fischbach did not have a duty to bring the arbitration clause to the respondents' attention. (See *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1309 [where clients had substantial experience with litigation and legal representation before signing the retainer, and clients had not established the retainer was one of adhesion, attorneys had no duty to point out the arbitration provision, and their failure to do so did not invalidate the

8

arbitration agreement].)  What the trial court viewed as critical and distinguished this matter from cases like *Mt. Holyoke Homes* was that Fischbach's actions impeded the respondents from seeing the arbitration clause for themselves.

There is some evidence supporting the finding of procedural unconscionability.  We must "look at the evidence in support of the successful party, disregarding any contrary showing, and we resolve all conflicts in favor of the respondent, indulging in all legitimate and reasonable inferences to uphold the verdict if possible.  [Citation.]" (*Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 394.)  Both turning to the signature page and failing to give a copy of the contract to the non-drafting party are evidence of procedural unconscionability.  In the context of an electronic agreement, our colleagues in the Third District found that one factor pointing towards procedural unconscionability was that the party who drafted the contract scrolled past the arbitration clause and directly to the places within the contract to be signed. (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 323 (*Cabatit*).)  Similarly, when Fischbach turned directly to page eight, the signature page, and past the arbitration agreement on page six, he impeded the respondents from seeing the arbitration clause. (Cf. *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 874–875 [finding no fraud in the inducement of attorney-client retainer where, among other factors, there was no effort to conceal the arbitration clause]; accord *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 622 [no procedural unsconscionably because no evidence of concealment of arbitration clause].)

9

In addition, failing to give the respondents a copy of the retainer agreement after they signed it (as determined by the trial court) is also evidence of procedural unconscionability. (*OTO*, *supra*, 8 Cal.5th at p. 128; accord *Cabatit*, *supra*, 60 Cal.App.5th at p. 323.)

Accordingly, there is evidence that Fischbach took steps to conceal the arbitration agreement from respondents to support the trial court's finding of procedural unconscionability.

**B.     There Is Significant Substantive Unconscionability**

" ' "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." [Citation.] " 'In assessing substantive unconscionability, the paramount consideration is mutuality.' " [Citation.]" (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 241.)

The trial court found the arbitration clause substantively unconscionable for two reasons. We agree with both determinations.

First, the arbitration clause states that the "[c]lient(s) has/have been advised of the consequences of this paragraph and has been given the option to seek independent legal advice concerning its significance and has chosen to enter into this Agreement freely and voluntarily." The trial court found that this "factual representation was apparently false. Defendants did not point the clause out to plaintiffs; defendants did not explain to plaintiffs what the clause meant; defendants did not tell plaintiffs that they had the option to seek independent advice as to the clause. All of those representations were false." Assuming, as we must, that this statement in the arbitration clause is false due to the evidence to the contrary that the trial

10

court credited below, then it is substantively unconscionable because it unfairly favors the appellants. As the trial court recognized, the appellants had an advantage by drafting the false statements in the arbitration agreement because their claim to compel arbitration would be "far stronger were the representation true." While the appellants had no duty to point out the arbitration clause, they cannot make an affirmative misrepresentation that is in their favor and claim mutuality.

Second, the trial court found the arbitration clause impermissibly one-sided in favor of appellants because, due to the steps taken to impede respondents from knowing the arbitration clause existed,[3] appellants were realistically the only party that would demand arbitration, and, under the clause, the demanding party always picks the arbitration organization, and that organization always picks the arbitrator. The arbitration clause states that that the party demanding arbitration gets to pick the arbitration organization, excluding the American Arbitration Association and JAMS, and that the arbitration organization chosen by that demanding party gets to pick the arbitrator. The trial court found that because respondents lacked the ability to be the demanding party due to appellants' actions impeding them from reading the agreement before and after signing it, "[respondents] had no way of knowing that the clause was there at all, which meant that defendants had set the system up so that

---

[3] The trial court properly considered the evidence of procedural unconscionability in determining substantive unconscionability in concluding that due to Fischbach's actions, the seemingly neutral arbitration clause is unilateral. (*OTO, supra*, 8 Cal.5th at p. 126 [substantive fairness is measured considering any procedural unconscionability].)

11

they would always be the demanding party. That makes what appears on its face to be a bilateral provision into a unilateral one."

Where, as here, the stronger (drafting) party is the only side that can realistically pick the choice of forum for dispute resolution, the clause is not mutual and is substantively unconscionable. (See *Carmona, supra*, 226 Cal.App.4th at p. 86 ["[T]he arbitration agreement is lacking in mutuality in that it 'requir[es] arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party' "].) Seemingly neutral clauses can be unfairly one sided when, upon closer look, they favor the more powerful party in that only that party will exercise a right under the clause. (See *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080–1082 [in medical-malpractice case, where arbitration clause stated that either party could request a trial if the arbitration award exceeded $25,000, it would be very rare that patient would do so with an award of such a large amount, so the clause was substantively unconscionable because it favored the doctor].)

Effectively having control of selection of the arbitration organization is more than just a theoretical advantage to appellants. It is common knowledge among experienced litigators (and a matter of common sense) that some arbitration organizations are notoriously biased in favor of parties that could end up repeatedly selecting the organization in future arbitrations. (See Carstensen, *Legal Experts Say Bias in Arbitration Is a Growing Problem* (Sept. 23, 2021) Law.com <https://www.law.com/international-edition/2021/09/23/legal-experts-say-bias-in-arbitration-is-a-growing-problem/?slreturn=20220301172521> [as of June 28, 2022].)

Selection of the organization could also affect the type of background possessed by the arbitrator (e.g., legal, business, etc.), and the location of any hearing. These are tactical advantages that appellants received by having effective control of initiating arbitration under the facts as determined by the trial court.

Accordingly, there is significant evidence of substantive unconscionability.

### C. The Totality of the Evidence of Unconscionability Constitutes Substantial Evidence

Appellants argue that even if there is some evidence of both procedural and substantive unconscionability, the evidence overall is insufficient to affirm the trial court.

"As with any contract, the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146, 1159-1160 [rejecting view in dissenting opinion that terms " 'must be "so one-sided" as to 'shock the conscience' " ' "].)

For the reasons above, we find that substantial evidence supported the trial court's determination of unconscionability. Although there is less evidence of procedural unconscionability, there is significant evidence of substantive unconscionability. Taken collectively, and viewing the evidence on a sliding scale as we must, the amount of substantive unconscionability makes up for the more minimal procedural unconscionability. (*OTO, supra,* 8 Cal.5th at p. 125 [the more of one type of unconscionability required the less of the other type required].)

The facts here are materially different from those in *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042 (*Marin Storage*), which appellants cite for their claim that the evidence overall is insufficient here.  In *Marin Storage*, the First District concluded that "[i]n light of the low level of procedural unfairness, we conclude that a greater degree of substantive unfairness than has been shown here was required before the contract could be found substantively unconscionable."  (*Id*. at p. 1056.)  There, the "low" procedural unfairness was simply that the contract was one of adhesion.  (*Id*. at pp. 1053–1054.)  The sole evidence of substantive unconscionability was an indemnification clause in a contract to lease a crane that required the leasing party to cede indemnification rights whenever the crane was used on its own premises, where the contractor had control over the crane, or when the injury was caused by the contractor.  The court found "nothing so inherently unfair about this reallocation of the risk as to shock the conscience."  (*Id*. at p. 1056.)

Here, there is more evidence of unfairness than in *Marin Storage*.  There is evidence that appellants concealed the arbitration clause by failing to provide respondents with a copy of the agreement and by turning the agreement past the arbitration clause to the signature page, made a false statement in the arbitration provision that favored appellants, and drafted an arbitration clause, that, when considered along with the steps appellants took to conceal it, rendered it without mutuality and in favor of appellants because they would always be the party that picked the arbitration organization.

14

Viewing the evidence as we must in the light most favorable to the prevailing party below (*Sanchez, supra*, 54 Cal.App.5th at p. 548), we conclude that substantial evidence supports the trial court's determination that the arbitration agreement is not enforceable due to unconscionability.

**DISPOSITION**

The order is affirmed. Respondents are entitled to their costs on appeal.

HARUTUNIAN, J.[*]

We concur:

STRATTON, P. J.

WILEY, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15