Filed 7/30/14  Sanchez v. Newhope Capital CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEDRO SANCHEZ, et al., | |
| Plaintiffs and Appellants, | G049093 |
| v. | (Super. Ct. No. 30-2011-00450220) |
| NEWHOPE CAPITAL, LLC, as Trustee, etc., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Affirmed.

Law Office of Nick A. Alden, Nick A. Alden and Aleksey Sirotin for Plaintiffs and Appellants.

Roup & Associates, Ronald D. Roup; Wright, Finlay & Zak and Joan C. Spaeder-Younkin for Defendant and Respondent Newhope Capital, LLC, as Trustee of Santa Anna #1736 Trust.

Michael D. May for Defendant and Respondent RESS Financial Corporation.

Roxborough, Pomerance, Nye & Adreani, Gary A. Nye and John W. Hurney for Defendant and Respondent Gonzales & Gonzales Bonds and Insurance Agency, Inc.

\*　　　　\*　　　　\*

Plaintiffs and appellants Pedro Sanchez, Maria Del Rosario Sanchez, Nancy Sanchez, and Alma Sanchez (collectively, Sanchezes) appeal from the dismissal of their claims against defendant and respondent Newhope Capital, LLC, as Trustee of Santa Anna #1736 Trust (Newhope), after the trial court granted Newhope's motion under Code of Civil Procedure section 664.6 to enforce a written settlement agreement.[1] The Sanchezes acknowledged they reached a settlement with Newhope and signed the settlement agreement, but opposed the motion because the settlement agreement included a sentence that partially released the other defendants in the action from liability for damages caused by Newhope. According to the Sanchezes, this partial release is unenforceable because they never agreed to it, or alternatively, they mistakenly consented because they thought the partial release had been removed from the settlement agreement. The trial court rejected these arguments.

We affirm. As explained below, whether the Sanchezes agreed to the partial release of the other defendants is determined based on their outward and objective expression of consent. Their signature on the settlement agreement is an outward and objective manifestation of consent to the settlement agreement and all of its terms; their subjective belief or intent not to partially release the other defendants is irrelevant.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

The Sanchezes' contention they consented to the partial release because they mistakenly believed the partial release had been removed from the settlement agreement also fails. Any belief the partial release had been removed is the result of the Sanchezes' and their attorney's neglect of their legal duty to read the settlement agreement before signing it, and therefore does not invalidate their consent. The partial release of the other defendants was in every version of the settlement agreement, and was consistent with an e-mail the Sanchezes point to as an accurate summary of the settlement terms. Neither the Sanchezes nor their counsel ever asked Newhope to remove the partial release from the agreement, and Newhope did not conceal the partial release or otherwise induce the Sanchezes into believing it was not in the final version of the settlement agreement.

I

FACTS AND PROCEDURAL HISTORY

In 1999, the Sanchezes and Jorge Sanchez purchased a residence (Residence) in Anaheim, California as joint tenants.[2] Approximately four years later, Pedro and Jorge Sanchez obtained an immigration bond from defendant and respondent Gonzales & Gonzales Bonds and Insurance Agency, Inc. (Gonzales), acting as an agent for American Surety Company (American), to secure the release of Manuel Arcos-Velez from an immigration hold. The Sanchezes were unaware the paperwork Pedro and Jorge Sanchez signed to obtain the bond included a deed of trust on the Residence.

Several years later, Gonzales and American initiated nonjudicial foreclosure proceedings on the Residence when Arcos-Velez failed to surrender to U.S. Immigration and Customs Enforcement for deportation. Defendant and respondent RESS Financial Corporation (Ress) conducted the nonjudicial foreclosure sale on Gonzales's

---

[2] Jorge Sanchez is not a party to the settlement agreement or this appeal.

3

and American's behalf and executed a trustee's deed upon sale transferring the Residence to Newhope in January 2011.

Newhope then filed an unlawful detainer action to evict the Sanchezes. Newhope obtained an unlawful detainer judgment, but the Sanchezes successfully appealed on the ground Newhope should have brought an action for partition rather than unlawful detainer because only two of the five individuals holding a joint tenancy interest in the Residence executed the deed of trust upon which the nonjudicial foreclosure sale was based.

In February 2011, the Sanchezes filed this action against Newhope, Ress, American, and Gonzales seeking to quiet title, rescind the trust deed and trustee's deed upon sale, and recover damages based on a variety of defects in the trust deed and nonjudicial foreclosure process. Newhope filed a cross-complaint seeking to partition the Residence based on the interest Newhope acquired at the nonjudicial foreclosure sale.

As the parties prepared for trial, the Sanchezes began settlement discussions with Newhope in which Ress, American, and Gonzales declined to participate. Four days before the trial date, Newhope's attorney e-mailed the Sanchezes' attorney to confirm a settlement had been reached: "Yes, the Newhope Capital people have agreed to Quit Claim their 40% interest in the property and waive any claim for the funds which were the subject of the foreclosure sale in return for a Dismissal, Full Release, and Good Faith Settlement Agreement approved by the court. [Newhope's co-counsel] is preparing the Motion, Declaration, and Proposed Order for the Good Faith Settlement. We will request the other defense counsel to stipulate to the Motion, but I fear they will see their consent to the transfer of title as an admission of some sort and we will have to give ex parte notice for an Order Shortening Time."

At approximately noon the next day, Newhope's attorney e-mailed the Sanchezes' attorney a draft "Compromise, Settlement and Release Agreement" (Settlement Agreement) memorializing the settlement. Paragraph 2 of the Settlement

4

Agreement explained that in consideration for the Sanchezes' release of claims and dismissal of their action against Newhope with prejudice, Newhope would quitclaim to the Sanchezes its interest in the Residence, dismiss its cross-complaint for partition with prejudice, and waive any claim to the surplus funds from the nonjudicial foreclosure sale. Paragraph 3 set forth the Sanchezes' release of their claims against Newhope and its related entities concerning the Residence, this action, the unlawful detainer action, and the cross-complaint for partition. Paragraph 3 also included the following sentence that would become the crux of the parties' dispute concerning the Settlement Agreement: "[The Sanchezes] acknowledge and agree that by virtue of their receipt of the Quitclaim Deed and the value associated with same, as well as the satisfaction of all of the other terms of this Agreement, [the Sanchezes] have been fully compensated for any and all damages incurred or sustained as a result of any conduct of Newhope Capital at or following the subject foreclosure sale, and that [the Sanchezes] will not seek any further damages, or assert any further claims in the Action related to the conduct of Newhope Capital, as against any other Defendants in the Action." Finally, paragraph 5 explained, "It is the intention of the Parties that this Agreement shall be effective as a full and final accord and release for each and every matter specifically or generally herein referred to."

The Sanchezes' attorney reviewed the proposed Settlement Agreement and responded by e-mail less than two hours later requesting that Newhope's attorney make three changes to the Settlement Agreement. The only change relevant to this appeal is the third and final change: "Third, I would like to add a provision specifically stating this agreement does not inten[d] to release any of the other defendants, including, but not limited to, Ress Financial Corporation, a California corporation, American Surety Company, an Indiana corporation, [and] Gonzales & Gonzales Bonds and Insurance Agency, Inc., a California corporation." (Some capitalization omitted.)

Newhope's attorney made the requested changes and e-mailed a revised Settlement Agreement to the Sanchezes' attorney that same afternoon. In her e-mail,

5

Newhope's attorney explained she made each of the requested changes and also modified paragraph 2 to clarify the Settlement Agreement was conditioned on the court finding the settlement was reached in good faith under section 877.6. As for the third change the Sanchezes' attorney had requested, Newhope's attorney explained, "See revision to Par. 5 re the other defendants."[3]

Newhope's attorney did not receive a response from the Sanchezes' attorney the rest of that day (Friday) or the following day (Saturday). Accordingly, on Sunday afternoon, Newhope's attorney e-mailed the Sanchezes' attorney to inquire whether any further changes were required to the Settlement Agreement. The Sanchezes' attorney responded a couple hours later, "It seems OK. However, I have to go through it with the clients."

All parties appeared for trial the next morning. At that time, the Sanchezes' attorney asked Newhope's attorney for a copy of the Settlement Agreement so he could review it with the Sanchezes. The Sanchezes' attorney contends Newhope's attorney told him she had revised the agreement according to his comments. Newhope's attorney acknowledges she provided the Sanchezes' attorney a copy of the same Settlement Agreement she had e-mailed late Friday afternoon, but denies she made any comments about the agreement's contents.

The Sanchezes signed the Settlement Agreement after discussing it with their attorney. The attorneys for Newhope and the Sanchezes then informed the court

_____

[3]    As revised, paragraph 5 reads, "It is the intention of the Parties that *except as otherwise provided in this Agreement,* this Agreement shall be effective as a full and final accord and release for each and every matter specifically or generally herein referred to, *and not a release of the other defendants, including, but not limited to, Ress Financial Corporation, a California corporation, American Surety Company, an Indiana corporation, [and] Gonzales & Gonzales Bonds and Insurance Agency, Inc., a California Corporation. . . ."* (Some capitalization omitted; italics added.) The italicized language is the language Newhope's attorney added to satisfy the request of the Sanchezes' attorney.

they had reached a settlement and Newhope would be seeking a good faith settlement determination. The trial court continued the trial date to allow time for the good faith settlement determination.

Later that same day, Newhope's attorney e-mailed a proposed stipulation to the attorneys for the other parties and asked them to agree the settlement between Newhope and the Sanchezes was in good faith under section 877.6. Upon reviewing Newhope's proposed stipulation, the Sanchezes' attorney discovered the Settlement Agreement his clients signed continued to include language in paragraph 3 that released all defendants from liability for damages caused by Newhope's acts or omissions. The Sanchezes' attorney immediately e-mailed Newhope's attorney stating the Sanchezes rescinded the Settlement Agreement because they never intended to release any defendant other than Newhope.

Newhope's attorney responded by e-mail, explaining she thought paragraph 3 was consistent with the parties' agreement: "I understood the intent behind the language to be that [the Sanchezes] would not seek damages against the other defendants for the conduct of Newhope Capital, which is different from the other defendants' own conduct. I don't believe the settlement language precludes [the Sanchezes] from seeking damages against the other defendants for their own conduct. This would be consistent with your request that there be a good faith settlement order."

Newhope therefore sought a good faith settlement determination from the court without the Sanchezes' stipulation. The Sanchezes opposed those efforts and also filed a motion under section 664.6 to rescind the Settlement Agreement based on mutual or unilateral mistake of fact concerning the partial release of the other defendants. The Sanchezes' reply in support of this motion expanded the relief they sought to include a request that the court reform the Settlement Agreement by striking the language in paragraph 3 quoted above and enforcing the remainder of the agreement.

7

The trial court denied the Sanchezes' motion and found the parties agreed to the settlement in good faith under section 877.6. The court explained it found no mistake of fact warranting rescission or reformation of the Settlement Agreement: "Failure to read a contract is not a sufficient ground to justify lack of assent, given that counsel previously acknowledges he reviewed the Agreement and did not seek revision or deletion of any terms regarding the provisions of paragraph #3. On the contrary, the evidence is that he probably did read it since he requested a revision to another paragraph in the document. Moreover, given that the terms of paragraph #3 are not contradictory to the requested additional language of paragraph #5, there is no evidence that plaintiff's counsel made a mistake in fact." The Sanchezes filed a petition for writ of mandate with this court seeking to overturn the trial court's ruling, but we summarily denied that petition.

Despite the trial court's ruling on their motion, the Sanchezes refused to dismiss their claims against Newhope as the Settlement Agreement required unless Newhope agreed to remove the objectionable language from paragraph 3. Accordingly, Newhope brought its own motion under section 664.6 seeking to enforce the Settlement Agreement against the Sanchezes. The Sanchezes opposed the motion, again arguing either a mutual or unilateral mistake existed concerning the objectionable language in paragraph 3 and asking the court to enforce the Settlement Agreement with that portion of paragraph 3 stricken.

The trial court granted Newhope's motion, finding the Settlement Agreement was valid and binding as written, and required the Sanchezes to dismiss their claims against Newhope. The court therefore ordered the claims against Newhope to be dismissed and the Sanchezes appealed from that dismissal.

II

DISCUSSION

A.       *Governing Section 664.6 Principles and the Sanchezes' Appeal*

Section 664.6 provides that where parties to pending litigation stipulate to settle the case orally in court, or in a writing signed outside of court, the trial court may enforce the settlement by entering judgment pursuant to its terms on the motion of one of the parties.  (§ 664.6.)  The Legislature enacted section 664.6 to provide a summary procedure for specifically enforcing a settlement agreement without the need for a new lawsuit.  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809-810 (*Weddington*); see *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 904-905 (*Assemi*).)  If the requirements of an oral stipulation in court or a writing signed by the parties cannot be satisfied, a party to a settlement agreement may still enforce the agreement by filing a separate lawsuit for breach of the agreement, or supplementing its pleading in the pending action to allege breach of the agreement.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) § 12:951.1, p. 12(II)-120 (rev. # 1 2013) citing *Smith v. Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371, 1374.)

In ruling on a section 664.6 motion the trial court acts as the trier of fact to determine whether the parties entered into a valid and binding settlement and the terms of that agreement.  (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732 (*Bowers*); *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1454; *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 565.)  The court may consider oral testimony or it may determine the motion on declarations alone.  (*Terry*, at p. 1454.)  Although the trial court may resolve factual disputes concerning the existence of a settlement and its terms, "nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington*, *supra*, 60 Cal.App.4th at p. 810, original italics.)

9

We review the trial court's factual determinations on the existence and terms of a settlement under the substantial evidence standard, and any legal determinations under the de novo standard. (*Weddington*, *supra*, 60 Cal.App.4th at p. 815; see *Assemi*, *supra*, 7 Cal.4th at p. 911.) We presume the trial court's judgment is correct and "[a]ll intendments and presumptions are made to support the judgment on matters as to which the record is silent." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

Here, the Sanchezes challenge both the trial court's ruling denying their section 664.6 motion to rescind or reform the Settlement Agreement, and the court's ruling granting Newhope's section 664.6 motion to enforce the Settlement Agreement. The Sanchezes make largely the same arguments on both motions and we address the merits of those arguments below. We pause, however, to note nothing in section 664.6 authorized the trial court to rescind or reform the parties' Settlement Agreement, even if the trial court found the Sanchezes' arguments convincing.

As explained above, section 664.6 creates a summary procedure allowing a trial court to specifically enforce a settlement agreement in the pending action if the agreement satisfies the statutory requirements. (*Weddington*, *supra*, 60 Cal.App.4th at pp. 809-810; see *Assemi*, *supra*, 7 Cal.4th at pp. 904-905.) On a section 664.6 motion, the court either may enter judgment enforcing the settlement, or the court may deny the motion if it finds the parties did not enter into a settlement or the settlement does not satisfy the statutory requirements. Accordingly, the trial court could not have granted the Sanchezes' motion to rescind or reform the Settlement Agreement even if it found their argument meritorious. In analyzing the Sanchezes' challenges to the Settlement Agreement, we therefore focus on whether the challenges have merit and, if so, whether a basis exists for either denying Newhope's motion to enforce the Settlement Agreement, or granting the motion, but enforcing the Settlement Agreement without the challenged language in paragraph 3 because it was not an agreed-upon term.

10

B.      *The Trial Court Did Not Err In Granting Newhope's Section 664.6 Motion to Enforce the Settlement Agreement*

The Sanchezes acknowledge they reached a settlement with Newhope to dismiss their claims against Newhope with prejudice and release Newhope from liability for damages arising out of the foreclosure and this litigation, in exchange for Newhope quitclaiming its interest in the Residence to the Sanchezes, dismissing its cross-complaint for partition with prejudice, and waiving any claim to the surplus funds from the nonjudicial foreclosure sale.  The sole basis on which the Sanchezes opposed Newhope's motion to enforce the Settlement Agreement was that the release in paragraph 3 of the agreement was broader than the Sanchezes intended because it partially released other defendants in addition to Newhope.

The Sanchezes assert two theories to support their contention the partial release of the other defendants may not be enforced against them.  First, the Sanchezes argue they never agreed to partially release the other defendants.  Second, if we determine they agreed to partially release the other defendants, the release nonetheless may not be enforced against them because they agreed to it based on a mistake of fact.  We address each of these contentions in turn.

1.      The Sanchezes Agreed to the Partial Release by Signing the Settlement Agreement

The Sanchezes first line of attack is that they never intended and never agreed to release any defendant other than Newhope.  According to the Sanchezes, they did not negotiate and never even discussed the idea of releasing any other defendant, and therefore there was no mutual consent or meeting of the minds regarding the partial release of the other defendants included in paragraph 3.  The argument lacks merit because the Sanchezes agreed to every term in the Settlement Agreement by signing it.

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."  (*Weddington*, *supra*,

11

60 Cal.App.4th at p. 810.)  Consent is an essential element for the formation of any contract and the consent must be mutual.  (*Id*. at p. 811; Civ. Code §§ 1550, 1565.)  "'Consent is not mutual, unless the parties all agree upon the same thing in the same sense.'  [Citations.]" (*Weddington*, at p. 811; Civ. Code, § 1580.)

"'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.'  [Citation.]"  (*Weddington*, *supra*, 60 Cal.App.4th at p. 811.)  Indeed, "[i]t is fundamental . . . that 'there need not be a subjective meeting of the minds; in the absence of fraud, mistake, etc. . . . , the outward *manifestation* or *expression* of consent is controlling.  In other words, *mutual consent is gathered from the reasonable meaning of the words and acts of the parties*, and not from their unexpressed intentions or understanding.'  [Citations.]" (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027, original italics (*Rodriguez*); see *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 ["California recognizes the objective theory of contracts [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'"].)  A party's "subjective intent, or subjective consent, therefore is irrelevant.  It is enough that a reasonable person would understand that the parties consented to the contract and consented to the same terms in the same sense."  (*Beard v. Goodrich* (2003) 110 Cal.App.4th 1031, 1040 (*Beard*).)

"In the absence of fraud, mistake, or other vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there." (*Rodriguez*, *supra*, 212 Cal.App.4th at p. 1027; *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 (*Marin*) ["ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms"].)

12

Here, the Sanchezes objectively manifested their assent to the Settlement Agreement, including the sentence in paragraph 3 partially releasing the other defendants, by signing the agreement after their attorney explained it to them and signed it himself. (*Stewart v. Preston Pipeline, Inc.* (2005) 134 Cal.App.4th 1565, 1587 (*Stewart*) [parties objectively manifested their mutual assent to settlement by signing written settlement agreement]; *Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 728 [bank objectively manifested consent when its employee signed acknowledgment and accepted escrow conditions]; *Marin*, *supra*, 89 Cal.App.4th at p. 1050 [party objectively manifested consent by signing "Work Authorization and Contract" that clearly stated it was contract].) The Sanchezes' contention there was no mutual consent because they never intended and never agreed to partially release the other defendants reflects nothing more than the Sanchezes' subjective intent and therefore is irrelevant. (*Beard*, *supra*, 110 Cal.App.4th at p. 1040.)

The Sanchezes nonetheless contend the evidence objectively establishes the lack of mutual consent because Newhope's attorney failed to mention a partial release of the other defendants in the e-mail sent to the Sanchezes' attorney confirming the settlement terms, and the Sanchezes' attorney asked Newhope in a later e-mail to "add a provision [to the Settlement Agreement] specifically stating th[e] agreement does not inten[d] to release any of the other defendants." [4] This contention fails for several reasons.

---

[4] The Sanchezes also contend Newhope judicially admitted the settlement did not include a partial release of the other defendants because the summary of the settlement terms Newhope provided in its opposition to the Sanchezes' motion to rescind the settlement did not include the partial release. This omission in a trial court opposition brief, however, is not a judicial admission. "Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission. . . . [¶] Not every document filed by a party constitutes a pleading from which a judicial admission may be extracted." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.) Motions and other related briefs are not pleadings to which the doctrine of judicial admissions applies. (*Id*. at pp. 746-747.) Moreover, the summary to which the

13

First, e-mails the parties' attorneys exchanged during the negotiation of the Settlement Agreement cannot defeat the Sanchezes' objective expression of consent when both they and their attorney signed the Settlement Agreement. As explained above, the test for determining mutual assent depends on whether the parties' outward manifestation or expression of consent would lead a reasonable person to believe the parties reached an agreement. (*Weddington*, *supra*, 60 Cal.App.4th at p. 811; *Rodriguez*, *supra*, 212 Cal.App.4th at p. 1027.) A signature on a written contract is an objective manifestation of assent to the terms of the agreement. (*Rodriguez*, at p. 1027; *Marin*, *supra*, 89 Cal.App.4th at p. 1049.)

Second, the Settlement Agreement includes an integration clause, which states the agreement contains the parties' entire understanding and agreement and no other representations "shall be deemed in any way to exist or bind any of the Parties hereto." That clause prevents the Sanchezes from varying the terms of the signed Settlement Agreement based on e-mails exchanged during negotiations. (Civ. Code, § 1625 ["The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument"]; § 1856, subd. (a) ["Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement"].)[5]

---

Sanchezes point is just that, a summary. It does not purport to be an exhaustive statement of every term of the settlement and does not prevent Newhope from arguing the partial release included in the Settlement Agreement is an agreed-upon term of the settlement.

[5] Section 1856 creates an exception to the parol evidence rule that allows a party to introduce extrinsic evidence that contradicts the terms of a written contract when there is a claim of mistake, but that exception limits the extrinsic evidence to the mistake issue only. (§ 1856, subd. (e) ["Where a mistake or imperfection of the writing is put in issue by the pleadings, this section does not exclude evidence relevant to that issue"].) At this point, we are considering only whether there was mutual consent and therefore these

14

Third, these two e-mails, if considered, do not demonstrate the trial court erred in concluding the parties mutually consented to the limited release of the other defendants. The declaration of the Sanchezes' attorney filed in opposition to Newhope's section 664.6 motion concedes the e-mail from Newhope's attorney confirmed "the basic terms of the settlement"; it did not purport to set forth every term to the exclusion of others. Newhope's attorney also explained she conditioned the settlement on the court finding the parties reached their agreement in good faith under section 877.6. The partial release of the other defendants enhanced the odds of gaining the court's approval because the court may find the settlement is in good faith only if it falls within the "reasonable range" of Newhope's proportionate share of liability for the Sanchezes' damages. (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499.) The court's approval of the settlement would then have the legal effect of barring all claims for equitable comparative contribution or partial or comparative indemnity by the other defendants against Newhope. (§ 877.6, subd. (c).) Without the release of the other defendants from liability for Newhope's conduct, the court could find the settlement was not in good faith because it allowed Newhope to transfer some of its liability to the other defendants.

Similarly, the e-mail by the Sanchezes' attorney merely asked Newhope to "*add*" a provision stating the parties do not intend to release any of the other defendants. (Italics added.) The Sanchezes' attorney never asked Newhope to delete the challenged sentence from paragraph 3 even though it was in every draft of the Settlement Agreement. Moreover, when Newhope's attorney revised the Settlement Agreement to comply with the request of the Sanchezes' attorney, Newhope's attorney specifically explained she complied with the request by adding the requested language to paragraph 5

e-mails are irrelevant on this issue, but we may consider them when we address the Sanchezes' claim of mistake.

15

of the Settlement Agreement. Newhope's attorney never represented she made any changes to paragraph 3.

Accordingly, the signed Settlement Agreement itself and the exchanges between the parties' attorneys regarding the Settlement Agreement constitute substantial evidence supporting the trial court's determination the Sanchezes and Newhope mutually consented to the terms of the Settlement Agreement, including the partial release of the other defendants in paragraph 3. (See *Bowers*, *supra*, 206 Cal.App.4th at p. 733 [trial court's determination regarding existence of settlement and its terms reviewed under substantial evidence standard].) We now consider whether the trial court erred in concluding the Sanchezes' claim of mistake did not vitiate their consent.

2.      No Mistake of Fact Vitiated the Sanchezes' Consent

The Sanchezes contend their consent to the partial release of the other defendants was based on either a mutual or unilateral mistake of fact regarding the partial release. According to the Sanchezes, the attorney for Newhope who prepared the Settlement Agreement mistakenly believed the partial release was a term to which the parties had agreed during their negotiations, and the Sanchezes' attorney mistakenly believed the release of the other defendants had been removed from the final version of the Settlement Agreement he instructed the Sanchezes to sign. Alternatively, the Sanchezes contend their attorney's mistaken belief the release of the other defendants had been removed from the Settlement Agreement constituted a unilateral mistake of fact vitiating their consent. Neither of these purported mistakes provides a proper ground for avoiding the partial release in the signed Settlement Agreement.

A mutual or unilateral mistake of fact may allow a party to rescind or reform a contract because it vitiates a party's consent to the contract or to a particular term. (Civ. Code, § 1689, subd. (b)(1) ["A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding, or of any party jointly

16

contracting with him, was given by mistake . . .]; Civ. Code, § 3399 ["When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . ."].)  Because a mistake of fact vitiates a party's consent (see Civ. Code, § 1567), it also may provide the basis for denying a section 664.6 motion or finding a settlement does not include a particular term.

"Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:  [¶]  1.  An unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . ." (Civ. Code, § 1577.)  This statutory definition prevents a party from avoiding a contract or any of its terms based on a mistake of fact when the mistake was caused by the neglect of a legal duty on the part of the party asserting the mistake.  (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 283; *Stewart*, *supra*, 134 Cal.App.4th at p. 1588.)  Ordinary negligence does not constitute neglect of a legal duty within the meaning of Civil Code section 1577.  (*Ibid.*)

Failure to read a contract, however, does not constitute a mistake justifying rescission or reformation:  "'It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.'  [Citations.]" (*Stewart*, *supra*, 134 Cal.App.4th at pp. 1588-1589; see *C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1501 ["'A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing it'"]; *Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605, 615["Failure to make reasonable inquiry to ascertain or effort to understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty such as will preclude recovery for unilateral mistake of fact"].)

17

In *Stewart*, the plaintiff sought to rescind a settlement agreement he signed based on a unilateral mistake of fact because he did not read or understand the document and all of its terms. (*Stewart*, *supra*, 134 Cal.App.4th at pp. 1586-1587.) The *Stewart* court rejected his challenge because the plaintiff caused the mistake by neglecting a legal duty. (*Id*. at pp. 1588-1589.) The court explained, "Plaintiff has cited no California cases (and we are aware of none) that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it—absent fraud or knowledge by the other contracting party of the alleged mistake—may later rescind the agreement on the basis that he did not agree to its terms. To the contrary, California authorities demonstrate that a contracting party is not entitled to relief from his or her alleged unilateral mistake under such circumstances. [Citations.] Indeed, the comments to the Restatement indicate that a party ordinarily may not obtain relief based upon unilateral mistake where he or she has failed to read the contract before signing it. [Citation.]" (*Id*. at p. 1589.)

Here, the trial court found the mistake was caused by the Sanchezes' (and their attorney's) failure to read the Settlement Agreement before signing it, and substantial evidence supports the trial court's finding. The Sanchezes' legal attack on the trial court's conclusion therefore fails under *Stewart*.

The original draft of the Settlement Agreement included the sentence in paragraph 3 partially releasing the other defendants. After reviewing that draft, the Sanchezes' attorney asked Newhope to "add a provision" stating the parties did not intend to release any of the other defendants. The Sanchezes' attorney did not ask Newhope to delete the partial release of the other defendants or otherwise revise paragraph 3 in any way. Newhope responded to the request by adding to paragraph 5 the language the Sanchezes' attorney sought. That was a logical place for the addition because paragraph was entitled "Intention of the Parties." In the e-mail forwarding the revised Settlement Agreement to the Sanchezes' attorney, Newhope's attorney

18

specifically explained that she accommodated the request by adding the language to paragraph 5. Two days after forwarding the revised Settlement Agreement, Newhope's attorney e-mailed the Sanchezes' attorney to inquire whether any further changes to the agreement were necessary. The Sanchezes' attorney responded, "It seems OK. However, I have to go through it with the clients." The Sanchezes then signed the Settlement Agreement without requesting any other changes.

We acknowledge *Stewart* involved a unilateral mistake and the Sanchezes assert both a unilateral and mutual mistake of fact. The neglect of a legal duty, however, defeats any claim based on a unilateral or mutual mistake of fact. (Civ. Code, § 1577 [defining mistake of fact to exclude mistake caused by neglect of a legal duty without differentiating between unilateral and mutual mistake]; see *Balistreri v. Nevada Livestock Production Credit Assn.* (1989) 214 Cal.App.3d 635, 642-644 [analyzing legal duty element in mutual mistake case].)

Moreover, the Sanchezes fail to identify a true mutual mistake of fact. "A 'mutual' mistake is one made by both parties as to the same proposition. Because one or the other may have been mistaken does not constitute mutuality of mistake; and does not constitute ground for rescission for mutual mistake." (*Wood v. Metzenbaum* (1951) 107 Cal.App.2d 727, 731; 14 Cal.Jur.3d (2014) Contracts, § 116; 1 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 1:117.) Here, the Sanchezes mistakenly believed the release of the other defendants had been removed from the Settlement Agreement, but Newhope's attorney mistakenly believed the partial release of the other defendants was an agreed-upon term and therefore was included in the Settlement Agreement. That demonstrates not a mutual mistake, but two separate unilateral mistakes by different parties. By finding the partial release was properly part of the Settlement Agreement, the trial court impliedly found Newhope was not laboring under any mistake and the only

19

purported mistake rested with the Sanchezes. The evidence described above supports that finding.[6]

Throughout their briefs, the Sanchezes repeatedly contend their mistake in signing the Settlement Agreement with the partial release was caused "[t]hrough [the] trickery and deception" of Newhope's attorney when she inserted the partial release in the agreement despite the lack of any assent for that term, and then failed to remove it upon the Sanchezes' request. Consequently, the Sanchezes assert, their failure to read the entire Settlement Agreement and discover the partial release remained in the final version does not prevent them from abrogating that term based on a mistake of fact. The Sanchezes stop short of accusing Newhope's attorney of fraud, but they assert her "unclean hands" prevent Newhope from enforcing the partial release against the Sanchezes. The record does not support this contention.

The trial court did not make any express findings regarding the Sanchezes' misconduct accusations against Newhope's attorney, but it necessarily rejected them by denying the Sanchezes' motion and granting Newhope's. As explained above, we must presume the trial court's ruling was correct and draw all inferences necessary to support the trial court on matters as to which the record is silent. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.) The record supports the implied finding that Newhope's attorney did not engage in any improper conduct and did not otherwise cause the Sanchezes' mistake. As more fully explained above, the record shows the partial release was in every version of the Settlement Agreement and formed the basis for the court to later find a good faith settlement under section 877.6. Newhope's attorney made every change the Sanchezes'

---

[6]     Even if we redefine the purported mutual mistake of fact to be a misunderstanding over the scope of the release—the Sanchezes thought the agreed-upon release was limited to Newhope only and Newhope thought the agreed-upon release extended to the other defendants' liability for Newhope's conduct—the Sanchezes' failure to read the Settlement Agreement constitutes the neglect of a legal duty that prevents them from obtaining relief based on this purported mutual mistake of fact.

attorney asked her to make to the Settlement Agreement, the Sanchezes' attorney never asked to remove the partial release in paragraph 3, and the Sanchezes never discovered the partial release because they failed to read the entire agreement before signing it. None of this suggests any misconduct by Newhope's attorney.[7]

Accordingly, we find substantial evidence supports the trial court's finding there was no mistake of fact that allowed the Sanchezes to avoid the partial release of the other defendants, and we affirm the trial court's decision granting Newhope's section 664.6 motion to enforce the Settlement Agreement against the Sanchezes.

III

DISPOSITION

The judgment is affirmed.  Newhope, Ress, and Gonzales shall recover their costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

---

[7]     The Sanchezes' attorney also contends Newhope's attorney misled them when she claimed to have made all of their requested changes in the copy of the Settlement Agreement she gave them on the day of trial.  Newhope's attorney denies she made any representation at all regarding the Settlement Agreement's contents.  The trial court necessarily resolved this conflict in Newhope's favor.  Moreover, the statement Newhope made all of the requested changes would not be a misrepresentation because the Sanchezes never asked her to delete or revise paragraph 3 or the partial release.